UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

MARCOS SHNAIDER STERN and                    Case No.: 22-12237-MAM
TANIA STERN                                  Chapter 7

       Debtor(s).
_____/

ROBERT C. FURR, Chapter 7 trustee for the
estate of Marcos Shnaider Stern and Tania Stern,

       Plaintiff,                            Adv. Pro. No.: 23-_____-MAM

v.

MARCOS SHNAIDER STERN, TANIA
STERN, and ARCHER SYSTEMS, LLC, a
Texas limited liability company, AYLSTOCK,
WITKIN, KREIS & OVERHOLTZ, PLLC, a
Florida professional limited liability company,
THE DUGAN LAW FIRM, LLC, a Louisiana
professional limited liability company, and
SULLIVAN PAPAIN BLOCK MCGRATH
COFFINAS & CANNAVO, P.C., a New York
professional corporation,

       Defendant(s).
_____/


## **COMPLAINT**

Robert C. Furr, chapter 7 trustee for the estate of Marcos Shnaider Stern and Tania Stern,

by and through undersigned counsel, sues Marcos Shnaider Stern and Tania Stern (collectively the

"**Debtors**") for turnover, to avoid and recover a post-petition transfer, and revocation of the

Debtors' discharge, and Archer Systems, LLC for turnover arising from the wrongful distribution

of settlement proceeds by Archer Systems, LLC to the Debtors, and Aylstock, Witkin, Kreis &

1

Overholtz, PLLC, The Dugan Law Firm, LLC, and Sullivan Papain Block McGrath Coffinas & Cannavo, P.C., each of which received distributions of the settlement proceeds as unauthorized compensation, and respectfully states:

## I.    PARTIES, JURISDICTION, AND VENUE

### A.    Parties

1.    Plaintiff is the duly authorized and acting Chapter 7 Trustee of the estate of Marcos Shnaider Stern and Tania Stern.

2.    Defendant Marcos Shnaider Stern ("**Mr. Stern**") is a Debtor under Chapter 7 of the Bankruptcy Code[1].

3.    Defendant Tania Stern ("**Mrs. Stern**," and jointly with Mr. Stern, the "**Debtors**") is a Debtor under Chapter 7 of the Bankruptcy Code.

4.    Defendant Archer Systems LLC ("**Archer Systems**") is a Texas limited liability company with its headquarters in Houston, Texas.

5.    Defendant Aylstock, Witkin, Kreis & Overholtz, PLLC ("**Aylstock Witkin**"), is a Florida professional limited liability company with its principal place of business located in Pensacola, Florida.

6.    Defendant The Dugan Law Firm, LLC ("**Dugan Law**"), is a Louisiana professional limited liability company with its principal place of business located in New Orleans, Louisiana.

7.    Defendant Sullivan Papain Block McGrath Coffinas & Cannavo, P.C. ("**Sullivan Papin**"), in a New York professional corporation with its principal place of business located in New York, New York.

---

[1] 11 U.S.C. §§ 101 *et seq*.

    **B.**     <u>Jurisdiction and Venue</u>

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334(b).

9.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (J), and (O).

10.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

11.      The Plaintiff consents to the entry of a final judgment by this Court on all counts in this Complaint.

**II.**     <u>GENERAL ALLEGATIONS</u>

    **a.**     <u>Procedural Background Through July 6. 2022</u>

12.      The Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on March 22, 2022 [ECF No. 1].  Along with the petition, the Debtors' initial schedules and statement of financial affairs were filed [ECF No. 1].  On their Schedule A/B, the Debtors marked "No" at question 33 for "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment."  [ECF No. 1, p. 15].

13.      Robert C. Furr was appointed chapter 7 trustee in this bankruptcy case and the § 341(a) Meeting of Creditors was scheduled for April 26, 2022 at 9:30 a.m. [ECF No. 2].

14.      On April 26, 2022, the trustee conducted the § 341(a) meeting of creditors, where Mr. Stern verbally informed the Trustee of his claim in the multi-district litigation involving Roundup. *See* ECF No. 22, p. 1, ¶ 4.  The Debtors filed Amended Schedules A/B disclosing Mr. Stern's interest in a certain "class action litigation claim[2]" [ECF No. 14, p. 8].

15.      On May 27, 2022, Mr. Stern filed *Motion to Dismiss Chapter 13* (sic) *Case Without Prejudice as to Debtor, Marcos Shnaider Stern, Only* [ECF No. 22] seeking to voluntarily dismiss

---

[2] Out of an abundance of caution arising from the settlement in the underlying MDL litigation and confidentiality requirements therein, the Plaintiff is not identifying the product at issue.

his chapter 7 bankruptcy case to keep the settlement proceeds out of the bankruptcy estate. The Trustee filed his *Response in Opposition to Motion to Dismiss Chapter 7 Case Without Prejudice as to Debtor, Marcos Shnaider Stern, Only [ECF No. 22]* [ECF No. 25].

16.    On June 22, 2022, after holding a hearing, the Court denied Mr. Stern's motion [ECF No. 28].

17.    On July 1, 2022, the Trustee filed his *Ex Parte Application* to employ undersigned counsel [ECF No. 30], which was granted on the same day [ECF No. 31].

18.    On July 6, 2022, the Debtors received their discharge.

**b.   E-mail Communications Between Archer Systems, the Trustee, and Counsel**

19.    On July 4, 2022, at 3:23 a.m., Archer Systems sent an e-mail to the Trustee notifying the Trustee that Mr. Stern was entitled to a gross settlement award of $86,250.00, after being directed by Debtors' counsel to reach out directly to the Trustee.

20.    On July 15, 2022, at 8:51 a.m., Archer Systems sent another e-mail to the Trustee, following up on whether the Trustee intended on administering Mr. Stern's claim in the multi-district litigation, with a letter from Archer for the Trustee to complete and select whether the estate had an interest in the claim.

21.    On July 15, 2022, at 2:04 p.m., undersigned counsel sent the fully executed letter back to Archer Systems notifying Archer that the Trustee would be administering the claim and requested a copy of the settlement agreement and settlement statement from Archer.

22.    On August 2, 2022, at 5:37 a.m., Archer Systems responded stating that it has not received the settlement agreement from the firm.

23.    On August 2, 2022, at 8:52 a.m. undersigned counsel responded to the Archer Systems e-mail requesting the retainer agreement along with the name and title of the attorney who

would be signing the affidavit of disinterestedness and at 8:53 a.m. undersigned sent a follow-up requesting any fee splitting agreement and names and information for all attorney's for each firm.

24.     On August 3, 2022, Archer Systems responded stating they had raised the request.

25.     On August 23, 2022, undersigned counsel sent a follow up e-mail regarding the retention information.

26.      On August 23, 2022, Archer Systems responded, providing a retainer agreement and in the body of the e-mail stating that the fee splitting arrangement was:

> Aylstock, Witkin, Kreis & Overholtz, P.L.L.C. - 29.75%
> The Dugan Law Firm, LLC - 20.25%
> Sullivan Papain Block McGrath & Cannavo P.C. - 50.00%

27.     On August 30, 2022, undersigned counsel sent Archer Systems another e-mail inquiring as to whether there were any additional agreements beyond the retainer agreement memorializing the fee split arrangement.

28.     On September 1, 2022, Archer Systems responded, stating they would raise the request.

29.     On September 2, 2022, Archer Systems sent a follow up e-mail stating there were no other writings and directing undersigned counsel to "line #4" of the retainer agreement.

30.     On September 19, 2022, at 5:07 a.m. Archer Systems sent undersigned counsel an e-mail requesting the application to employ, order, and affidavits be provided in word format for Archer Systems to share with the firms.

31.     On September 19, 2022, undersigned counsel responded and again requested information for all the attorneys whose firms were being employed, in order to complete the Application and affidavits, which had been requested back on August 8, 2022.

32.     On September 20, 2022, Archer Systems responded providing the request

information for Aylstock Witkin and Dugan Law but was still waiting for Sullivan Papin's information.

33.    On September 21, 2022, Archer Systems sent a follow up e-mail, this time changing the fee splitting agreement to include **only** "[Aylstock, Witkin, Kreis & Overholtz, P.L.L.C.]: 50%" and "Sullivan Papain Block McGrath & Cannavo P.C.: 50%" but still waiting for Sullivan Papin's information.

34.    On September 23, 2022, at 3:18 a.m., Archer Systems sent an e-mail with the requested information for Sullivan Papin.

35.    On September 23, 2022, at 1:49 p.m., undersigned counsel sent Archer Systems the draft Application to Employ Special Counsel, proposed order, and affidavits is special counsel for the Aylstock Witkin and Sullivan Papin.

36.    On October 4, 2022, undersigned sent an e-mail to Archer Systems following up on the status of the Application, Order, and affidavits.

37.    On October 6, 2022, Archer Systems sent an e-mail with the signed affidavit of disinterestedness on behalf of the Sullivan Papin.

38.    On October 7, 2022, Archer Systems sent an e-mail with the signed affidavit of disinterestedness on behalf of the Aylstock Witkin.

39.    On October 11, 2022, the undersigned sent an e-mail inquiring whether the application was good to file.

40.    On October 12, 2022, at 9:44 a.m. Archer Systems responded that some revisions to the application were required.

41.    On October 12, 2022, at 11:05 a.m. Archer Systems provided a revised draft of the Application to Employ Special Counsel.

### c.  **The Filing of the Application to Employ Special Counsel and Continued Request for the Settlement Statement**

42.     The revised version of the application to employ special counsel was approved by the Trustee and filed with this Court on October 18, 2022 [ECF No. 35].  The Court entered an order approving the retention of Aylstock Witkin and Sullivan Papin [ECF No. 38] on November 4, 2022.

43.     On November 29, 2022, undersigned counsel reached out to Archer Systems, providing a copy of the order approving the retention of Aylstock Witkin and Sullivan Papin and requesting a copy of the settlement statement and any other settlement documents to prepare the motion to compromise.

44.     Archer Systems responded the same day stating that the documents had been requested.

45.     On December 6, 2022, undersigned counsel sent an e-mail inquiring about the status of the settlement documents.  No response was received.

46.     On December 13, 2022, undersigned counsel sent another e-mail following up on the status of the settlement documents.

47.     On December 13, 2022, Archer Systems responded stating that Archer still had not received the requested settlement documents.

48.     On January 19, 2023, undersigned counsel sent another e-mail following up on the status of the settlement documents.  No response was received.

49.     On January 24, 2023, undersigned counsel sent another e-mail following up on the status of the settlement documents.  No response was received.

50.     On January 31, 2023, undersigned counsel sent another e-mail following up on the status of the settlement documents.

### d.  Notice to Trustee's Counsel that Archer Had Disbursed the Funds to the Debtor, <u>Special Counsel, and Others</u>

51.     On February 1, 2023, undersigned counsel received a call from Consuelo Vega from Archer Systems providing notice to the Trustee that Archer Systems had in fact disbursed the full amount of the settlement proceeds back in September 2022 to the Debtor.  A settlement statement, **attached as Exhibit 1**, provided on February 1, 2023 in connection with a follow up e-mail by Archer Systems, shows the distributions of the full $86,250.00 ("**<u>Settlement Funds</u>**") awarded to Marcos Stern from the product liability litigation.

52.     According to the e-mail from Archer Systems and settlement statement, distributions of the settlement amount began on August 25, 2022, while undersigned counsel was communicating to obtain the name and retention information for proposed special counsel.

53.     The Debtors received two checks totaling $37,467.11.  The first disbursement on August 25, 2022 in the amount of $30,965.30, and the second disbursement on September 28, 2022, in the amount of $6,501.81.

54.     Moreover, on September 15, 2022, a mere 4-days prior to requesting drafts of the application to employ, affidavit of disinterestedness, etc., in word format, Archer disbursed a total of $28,747.13, to three law firms, one of which, the Dugan Law Firm, had been expressly removed from the group pf proposed special counsel sent in the e-mails from Archer Systems.

55.     Notwithstanding, the Debtor having knowledge that the Trustee was administering the products liability claim, upon receiving the funds it does not appear that the Debtors notified their counsel or anyone else regarding the receipt of such funds.  Instead, the Debtors have spent a lot of the funds at issue.

## COUNT I
## TURNOVER PURSUANT TO 11 U.S.C. § 542
(Against Debtors)

56.    The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

57.    Section 542 of the Bankruptcy Code requires entities to deliver to the trustee assets of the estate that the trustee may administer.  11 U.S.C. § 542.

58.    With respect to the funds received by the Debtors that were part of the gross settlement award in the MDL, those funds are property of the estate subject to turnover.

59.    Therefore, the Plaintiff demands all settlement funds received by the Debtor be turned over immediately.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment:

a)    Requiring the immediate turnover of all Settlement Funds received by the Debtors;

b)    An accounting of the Settlement Funds received by the Debtors through judgment; and

c)    Granting such other and further relief as the Court deems proper.

## COUNT II
## TURNOVER PURSUANT TO 11 U.S.C. § 542
(against Aylstock, Witkin, Kreis & Overholtz, PLLC)

60.    The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

61.    Section 542 of the Bankruptcy Code requires entities to deliver to the trustee assets of the estate that the trustee may administer.  11 U.S.C. § 542.

62.    With respect to the portion of the Settlement Funds received by Aylstock Witkin, those funds are property of the estate subject to turnover.

63.     Therefore, the Plaintiff demands all Settlement Funds received by Aylstock Witkin be turned over immediately.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment:

a)      Requiring the immediate turnover of all Settlement Funds received by Aylstock, Witkin, Kreis & Overholtz, PLLC;

b)      An accounting of the Settlement Funds received by Aylstock, Witkin, Kreis & Overholtz, PLLC through judgment; and

c)      Granting such other and further relief as the Court deems proper.

### COUNT III
### <u>TURNOVER PURSUANT TO 11 U.S.C. § 542</u>
(against The Dugan Law Firm, LLC)

64.     The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

65.     Section 542 of the Bankruptcy Code requires entities to deliver to the trustee assets of the estate that the trustee may administer.  11 U.S.C. § 542.

66.     With respect to the portion of the Settlement Funds received by The Dugan Law Firm, LLC, those funds are property of the estate subject to turnover.

67.     Therefore, the Plaintiff demands all Settlement Funds received by The Dugan Law Firm, LLC be turned over immediately.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment:

a)      Requiring the immediate turnover of all Settlement Funds received by The Dugan Law Firm, LLC;

b)      An accounting of the Settlement Funds received by The Dugan Law Firm, LLC through judgment; and

c)      Granting such other and further relief as the Court deems proper.

## COUNT IV
## TURNOVER PURSUANT TO 11 U.S.C. § 542
(against Sullivan Papain Block McGrath Coffinas & Cannavo, P.C.)

68.     The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

69.     Section 542 of the Bankruptcy Code requires entities to deliver to the trustee assets of the estate that the trustee may administer.  11 U.S.C. § 542.

70.     With respect to the portion of the Settlement Funds received by Sullivan Papin, those funds are property of the estate subject to turnover.

71.     Therefore, the Plaintiff demands all Settlement Funds received by Sullivan Papin be turned over immediately.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment:

a)      Requiring the immediate turnover of all Settlement Funds received by Sullivan Papain Block McGrath Coffinas & Cannavo, P.C.;

b)      An accounting of the Settlement Funds received by Sullivan Papain Block McGrath Coffinas & Cannavo, P.C. through judgment; and

c)      Granting such other and further relief as the Court deems proper.

## COUNT V
## TURNOVER PURSUANT TO 11 U.S.C. § 542
(against Sullivan Papain Block McGrath Coffinas & Cannavo, P.C.)

72.     The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

73.     Section 542 of the Bankruptcy Code requires entities to deliver to the trustee assets of the estate that the trustee may administer.  11 U.S.C. § 542.

11

74.     All the Settlement Funds constitute property of the Bankruptcy Estate.  Archer Systems as administrator for the MDL, is holding the Settlement Funds for the benefit of this estate.

75.     Archer Systems is required to turn over all Settlement Funds to the Trustee of this estate for administration in this estate.

76.     Therefore, the Plaintiff demands all Settlement Funds be turned over immediately.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment:

a)      Requiring the immediate turnover of all Settlement Funds received by Sullivan Papain Block McGrath Coffinas & Cannavo, P.C.;

b)      An accounting of the Settlement Funds received by Sullivan Papain Block McGrath Coffinas & Cannavo, P.C. through judgment; and

c)      Granting such other and further relief as the Court deems proper.

**COUNT VI**
**AVOIDING AND RECOVERING UNAUTHORIZED**
**POST-PETITION TRANSFERS PURSUANT TO 11 U.S.C. §§ 549 AND 550**
(Alternative Relief against the Debtors, Aylstock Witkin,
The Dugan Law Firm, LLC, and Sullivan Papain)

77.     The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

78.     Section 549(a) of the Bankruptcy Code authorizes a trustee to avoid any "transfer of property of the estate that occurs after the comment of the case; and … that is not authorized under this title or by the court."  11 U.S.C. § 549(a)(1) and (2)(B).

79.     Section 550(a) of the Bankruptcy Code provides for the recovery of transfers avoided under § 549.  11 U.S.C. § 550(a).

80.     Archer Systems' transfers of the Settlement Funds in August or September 2022

occurred post-petition.

81.      The transfers of the Settlement Funds occurred without authority under the Bankruptcy Code or order of this Court.

82.      Each of the post-petition transfers of the Settlement Funds in avoidable transfer under § 549(a) of the Bankruptcy Code.

83.      The Debtors; Aylstock Witkin; The Dugan Law Firm, LLC; and Sullivan Papin are each the initial transferees or the parties for whose benefit the post-petition transfers were made.

84.      To the extent (i) the Debtors, (ii) Aylstock Witkin, (iii) The Dugan Law Firm, LLC, or (iv) Sullivan Papin is deemed to be a mediate or immediate transferee of the post-petition transfers of the Settlement Funds, then Transfers are recoverable because none of the transferees provided value in exchange for receipt of the Settlement Funds, Aylstock Witkin and Sullivan Pain agreed to and are required to seek approval from this Court for any compensation or reimbursement for which they believe they are entitled, The Dugan Law Firm was likewise required to be employed by the estate and compensation and reimbursement are to be approved by this Court, the transfers were not received in good faith, and each of the (i) Debtors, (ii) Aylstock Witkin, (iii) The Dugan Law Firm, LLC, and (iv) Sullivan Papin had knowledge of the voidability of the transfers.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgments:

a)      Finding each of (i) the Debtors, (ii) Aylstock Witkin, (iii) The Dugan Law Firm, LLC, and (iv) Sullivan Papin to be the initial transferee of the respective portions of the Settlement Funds for which they were the transferee and/or the person or entity for whose benefit the respective transfers were made;

b)      In the alternative, finding each of (i) the Debtors, (ii) Aylstock Witkin, (iii) The

Dugan Law Firm, LLC, and (iv) Sullivan Papin to be the immediate or mediate transferee of the respective post-petition transfer of the Settlement Funds;

c)      Ordering each of (i) the Debtors, (ii) Aylstock Witkin, (iii) The Dugan Law Firm, LLC, and (iv) Sullivan Papin to turn over to the Plaintiff the portion of the Settlement Funds avoided as post-petition transfers or entering a money judgment against each of (i) the Debtors, (ii) Aylstock Witkin, (iii) The Dugan Law Firm, LLC, and (iv) Sullivan Papin for the value of the avoided post-petition transfers of the Settlement Funds, plus interest at the applicable federal statutory rate and costs and expenses permissible by applicable law; and

d)      Granting the Plaintiff such other and further relief as this Court deems just and proper.

**COUNT VII**
**REVOKING DEBTORS' DISCHARGE PURSUANT TO 11 U.S.C. § 727(e)**
(against the Debtors)

85.     The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

86.     Section 727(e) reads in pertinent part:

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

\*\*\*

(2) under subsection (d)(2) or (d)(3) of this section before the later of—
(A) one year after the granting of such discharge; and
(B) the date the case is closed.

11 U.S.C. § 727(e).

87.     Section 727(d)(2) of the Bankruptcy Code reads as follows:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

\*\*\*

> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

11 U.S.C. § 727(d)(2).

88.     The Debtors knew that the Trustee intended to administer the litigation claim, including that the Debtors filed a Motion to Dismiss only Mr. Stern in an attempt to keep the Settlement Funds out of the bankruptcy estate.  The Debtors also knew that the Motion was denied before receiving the funds.

89.     The Debtors acquired property that is property of the estate, a portion of Settlement Funds.

90.     The Debtors knowingly and fraudulently failed to report the acquisition of the portion of the Settlement Funds.  The only notice the Trustee received was from Archer Systems, more than four months after the Debtors had received the Settlement Funds.

91.     On February 1, 2023, counsel for the Trustee sent Debtors' counsel a demand for turnover or payment of the Settlement Funds the Debtor received within 7-days of the date of the letter.  To date, the settlement Funds have not been received.

92.     The Trustee is seeking this relief within 1-year of the order grating the Debtor Debtors' discharge.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter a judgment against the Debtors:

a)     Revoking the Debtors' discharge pursuant to 11 U.S.C. § 727(e)(2); and

b)     Granting such other and further relief as this Court deems just and proper.

## COUNT VIII
## DISGORGEMENT
(Alternative Relief against Aylstock Witkin,
The Dugan Law Firm, LLC, and Sullivan Papain)

93.     The Trustee realleges paragraphs 1 through 55 above and incorporates those allegations by reference.

94.     11 U.S.C. § 327 permits a trustee to employ professionals, including special counsel.  11 U.S.C. § 327(e).

95.     11 U.S.C. § 330 authorizes an award of compensation to one of three types of persons: (i) trustee; (ii) examiners; and § 327 professional persons.  Section 330(a)(1) does not authorize compensation awards from estate funds unless the professionals are employed as authorized by § 327.

96.     Fed. R. Bankr. P. 2016(a) provides that an entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application.  Such applications must be sufficiently detailed to allow the court to perform its required, and independent, assessment of reasonableness under 11 U.S.C. § 330(a).

97.      The source of this Court's authority to impose a remedy for conduct that violates these provisions is derived from equitable principles including the court's inherent power to enforce its own orders and the principles embodied in 11 U.S.C. § 105(a), which includes disgorgement, interest, attorney's fees, and costs.

98.     None of Aylstock Witkin, The Dugan Law Firm, LLC, or Sullivan Papin filed applications for compensation or reimbursement of fees to receive their respective portions of the Settlement Funds.

99.     Each of Aylstock Witkin and Sullivan Papin received the funds while engaged in discussions regarding their applications to be employed.

100.    The Dugan Law Firm was never employed as special counsel.

101.    Each of these defendants is subject to disgorgement of the respective portions of the Settlement Funds each firm has received.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter judgments in favor of the Plaintiff and

a)    Against Aylstock, Witkin, Kreis & Overholtz, PLLC, disgorging fees received in an amount not less than $8,552.27, plus pre- and post-judgment interest, attorney's fees, and costs;

b)    Against The Dugan Law Firm, LLC, disgorging fees received in an amount not less than $5,821.29, plus pre- and post-judgment interest, attorney's fees, and costs;

c)    Against Sullivan Papain Block McGrath Coffinas & Cannavo, P.C., disgorging fees received in an amount not less than $14,373.56, plus pre- and post-judgment interest, attorney's fees, and costs; and

d)    Granting the Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted this 24th day of February 2023.

FURR AND COHEN, P.A.
*Attorneys Trustee*
2255 Glades Road, Suite 419A
Boca Raton, Florida 33431
(561) 395-0500; (561) 338-7532 - facsimile

By /s/*Jason S. Rigoli*
   Jason S. Rigoli, Esq.
   Florida Bar No. 91990
   E-mail: jrigoli@furrcohen.com

## EXHIBIT "1"

██████ **CLOSING STATEMENT**

██████

| Client Name: | Marcos Stern | |
|---|---|---|
| Address: | 20047 Boca West Drive | Client ID #: 2019-26684 |
| City, State, Zip: | Boca Raton, FL 33434 | |

| | | |
|---|---|---|
| **Gross Settlement Award:** | | **$86,250.00** |
| Court-Ordered Federal MDL Assessment (If Applicable)<br>(8% of Gross Award - see attached for detailed breakdown) | (-) | |
| **Final Settlement Award:** | | **$86,250.00** |
| Attorneys' Fees<br>(See attached for detailed breakdown) | ($28,747.13) | |
| Expenses<br>(See attached for detailed breakdown) | ($662.58) | |
| Medical Liens | ($19,373.19) | |
| Cash Advancement / Loan Repayment<br>(If applicable) | (-) | |
| **Total Attorneys' Fees, Expenses, Advances, & Medical Liens:** | **($48,782.90)** | |
| **Net Due to Client:** | | **$37,467.11** |



AWKO_Dugan_____███_____Aylstock, Witkin, Kreis & Overholtz, PLLC _____███
ARCHER Systems ▪ 1775 St. James Place ▪ Suite 200 ▪ Houston, TX 77056



**Closing Statement — Detailed Breakdown**

| Client Name: | Marcos Stern | |
|---|---|---|
| Address: | 20047 Boca West Drive | Client ID #: 2019-26684 |
| City, State, Zip: | Boca Raton, FL 33434 | |

**TOTAL GROSS SETTLEMENT AWARD** $86,250.00

**MULTI DISTRICT LITIGATION ASSESSMENT**

| 8% of Gross Settlement -Court Ordered Federal MDL PSC Assessment**(where applicable): | (-) |
|---|---|
| To be deducted from Attorneys' Fees: | |
| **TOTAL GROSS SETTLEMENT AMOUNT AFTER MDL ASSESSMENT:** | **$86,250.00** |

**ATTORNEYS' FEES SUMMARY**

| Contingency Fee Contract Rate: | 33.33% | |
|---|---|---|
| Total Gross Attorney Fees: | | $28,747.13 |
| Less Amount of MDL PSC Assessment Deducted from Attorneys' Fees*: | | - |
| Net Attorneys' Fees Distributed to Attorneys: | | $28,747.13 |

| Detailed Breakdown by Law Firm of Attorneys' Fees: | | Allocated Fee: |
|---|---|---|
| Aylstock, Witkin, Kreis & Overholtz, PLLC | 29.75% | $8,552.27 |
| The Dugan Law Firm, LLC | 20.25% | $5,821.29 |
| Sullivan Papain Block McGrath & Cannavo P.C. | 50.00% | $14,373.56 |
| **TOTAL ATTORNEY FEES** | **33.33%** | **($28,747.13)** |

**MEDICAL LIENS**

| Lien Status: | FINAL | $19,373.19 |
|---|---|---|
| **TOTAL MEDICAL LIENS:** | | **($19,373.19)** |

**EXPENSES** (See Attached Accounting)

| Common Benefit Fee | $25.00 |
|---|---|
| Case Specific Expenses | $637.58 |
| **TOTAL EXPENSES** | **($662.58)** |

**CASH ADVANCES**

| Cash Advances | - |
|---|---|
| **TOTAL CASH ADVANCES** | **(-)** |

| **Total Net Award Due to Client\*** | **$37,467.11** |
|---|---|

*\*\*Judge Vince Chhabria of the United States District Court for the Northern District of California in In re ▇▇▇▇ Products Liability Litigation (MDL No. 2741 ) issued PTO #236, to create a fund to reimburse the court-appointed Common Benefit Attorneys who organized the discovery portion of the nationwide litigation for their incurred expenses and their time. The court order requires that 8% of the gross amount of recovery must be placed into the common benefit fund. This 8% must come from the attorney fee portion of recovery.*
*\*\*\*\*Medicare lien resolution is required under the ▇▇▇▇ settlement and was conducted via a Global Medicare Resolution Model. Under this Global Model, Medicare agreed to a 30% cap of the gross award on any lien. A global resolution process is a method for resolving Medicare liens in mass tort settlements to establish fair reimbursement values for a large group of claimants without Medicare having to review each claimant's records on a case-by-case basis, which would take years to complete. In this process, Medicare established a universe of settling claimants and calculated an amount for each Medicare entitled claimant. Global resolution values are based on the common course of treatment*



AWKO_Dugan_▇▇▇▇_Aylstock, Witkin, Kreis & Overholtz, PLLC _
ARCHER Systems ▪ 1775 St. James Place ▪ Suite 200 ▪ Houston, TX 77056

*associated with the compensable injury, provided by Medicare's guidance. Your payment under the Medicare Model ensures that your Medicare lien obligation is fulfilled and that any future Medicare benefits are not impacted for any reasons pertaining to the ▮▮▮▮ settlement.*

*\*\*\*If a Liens Holdback is indicated above, for any Medical Lien(s) related to injury, there may or may not be a remaining balance of that holdback after final lien resolution.  If there is a balance after all liens are finalized, it will be disbursed to you*

BANKRUPTCY USE ONLY

AWKO_Dugan ▮▮▮▮ Aylstock, Witkin, Kreis & Overholtz, PLLC ▮▮▮▮
ARCHER Systems ▪ 1775 St. James Place ▪ Suite 200 ▪ Houston, TX 77056



*AWKRUA2019-2668 4 $37467.105*

*MARCOS STERN*





### Reimbursable Expenses

| | | |
|---|---|---|
| Copy Charges and Mailing Supplies | $1.50 | |
| Court Costs & Filing Fees | - | |
| Delivery & Courier Charges | - | |
| Expert & Medical Record Review | - | |
| Medical Record Retrieval | $39.95 | |
| Firm Postage and Fax Charges | $3.80 | |
| Legal Research | $0.11 | |
| ▉▉▉ Related Miscellaneous Expenses | $68.47 | |
| Expense Credit | - | |
| Settlement Fund Administrative Charges | $265.00 | |
| CAG Expense* | - | |
| Nurse Review Fee | $258.75 | |
| | | |
| | | |
| **Total Case Specific Costs** | | **$637.58** |
| | | |
| **Common Benefit Fee** | | **$25.00** |
| | | |
| **Total Expenses** | | **$662.58** |

| | | |
|---|---|---|
| **Total Net Award Due to Client** | | **$37,467.11** |

